## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CEVDET AKSÜT VE OĞULLARI KOLL. STI,

               **Plaintiff,**

vs.

HUSEYIN CAVUSOGLU,

               **Defendant.**

**CASE NO.: 2:12-CV-02899-WJM-MF**

**JOINT PRETRIAL ORDER**

A pretrial conference* having been held before the Honorable Mark Falk, U.S.M.J., Steven Soulios, Esq. and Luke Tynan, Esq., of Ruta Soulios & Stratis LLP, having appeared for plaintiff, and Nicholas A. Vytell, Esq. and Joseph P. McNulty, Esq., of Carroll, McNulty Kull LLC, having appeared for defendant, this Final Pretrial Order is hereby entered:

*Time Incurred:

_____

## 1. JURISDICTION (set forth specifically)

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(c), Fed.R.Civ.P. 4(k)(1)(a) and New Jersey Court Rule 4:4-4(a)(4) because the matter in controversy exceeds $75,000 exclusive of interest and costs and the matter is between citizens of a state and a foreign state.

Specifically, Plaintiff is a Turkish corporation with its principal place of business at Devlet Karayolu Uzeri Dallica Koyu 09800 Nazilli, Turkey. Defendant, Huseyin Cavusoglu, is the former principal and President of HGC Commodities Corp. ("HGC"), a dissolved New Jersey corporation. HGC previously transacted and conducted business with Plaintiff out of a warehouse located at 1200 West Blancke Street, Linden, New Jersey 07036. The acts and omissions alleged to have been committed by Defendant were performed in New Jersey. Jurisdiction is further established by the Fed.R.Civ.P. 4(k)(1)(a)'s incorporation of New Jersey's Long Arm Statute as set forth in New Jersey Court Rule 4:4-4(a)(4). See Gendler & Co. v. Telecom Equipment Corp., 508A.2d 1127 (N.J. 1986)(permitting exercise of long-arm jurisdiction over non-resident defendant to the full extent permitted by due process of law); Avdel Corp. v. Mecure, 277 A.2d 207 (N.J.1971) (observing that New Jersey's long-arm jurisdiction extends to the "outermost limits permitted by the United States Constitution"); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

**2.    PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position contemplated in limine motions should also be set forth.)

### Plaintiff's Motions

Plaintiff intends to move for an order *in limine* precluding testimony concerning allegations that Defendant capitalized HGC with funds obtained from a mortgage on his New Hampshire home as Defendant failed to produce any such documents during discovery.

Plaintiff intends to move for an order *in limine* precluding testimony of Barbaros Karaahmet.

Plaintiff intends to move for an order *in limine* precluding testimony of Aret Museoglu.

Plaintiff intends to move for an order *in limine* precluding testimony of a corporate representative of Natural Food Source.

Plaintiff intends to for an order *in limine* precluding the raising of defenses not raised in the Answer.

### Defendant's Motions

Motion *in limine* to preclude Plaintiff from presenting evidence or seeking recovery of damages not sought in the complaint including without limitation, attorneys' fees and punitive damages.

Motion *in limine* to preclude any testimony or evidence regarding prior lawsuits including, without limitation, Holsa and Fentex.

Motion *in limine* to preclude any testimony or evidence regarding personal or corporate bank statements before September 2009.

Motion *in limine* to preclude any testimony or evidence regarding personal or corporate bank statements after March 2010.

Motion *in limine* to preclude any testimony or evidence regarding the Settlement reached with Sunrise Commodities Corp.

Motion *in limine* to preclude any testimony or evidence regarding other entities in which Defendant has held and ownership interest.

Motion *in limine* to preclude any testimony or evidence regarding Defendant's alleged "re-entry" into the food import business including without limitation, through Northeast Imports or CNC Warehousing LLC.

Motion *in limine* to preclude Plaintiff from calling Robin Cavusoglu as a witness at trial and/or seeking testimony that is privileged from disclosure.

**3.     STIPULATION OF FACTS** (Set forth in numbered paragraphs all uncontested facts, including all answers to interrogatories and admissions to which the parties agree.)

1.  Plaintiff is a Turkish corporation with its principal place of business at Devlet Karayolu Uzeri Dallica Koyu 09800 Nazilli, Turkey. Plaintiff is a seller and exporter of food products, including apricots and pine nuts.

2.  Defendant Huseyin Cavusoglu ("Cavusoglu") is an individual residing at 95 Ridge Road, Windham, New Hampshire.

3.  HGC Commodities Corporation ("HGC") is a dissolved New Jersey corporation.

4.  Cavusoglu is the former 100% owner and President of HGC.

5.  Cavusoglu controlled, managed, and oversaw the entire business of HGC.

6.  Cavausoglu managed all of the affairs of HGC, including its finances and operations.

7.  HGC's principal place of business was located at 1200 West Blancke Street, Linden, New Jersey 07036.

8.  HGC kept no minutes or records of meetings held by shareholders or directors and no such meetings were held.

9.  HGC was an importer and distributor of food products. HGC was also a packager and warehouser of food products.

10.  In September, 2009, Defendant spoke with Oguz Kanyilmaz, Sales Manager for Plaintiff, by telephone regarding the prospective purchase by HGC of dried apricots and pine nuts from Plaintiff.

11.    In October 2009 HGC, placed 13 orders with Plaintiff for dried apricots and pine nuts.

12.    Between October 26, 2009 and December 10, 2009, Plaintiff shipped thirteen (13) cargoes of apricots and pine nuts to HGC and issued invoices to HGC for same. HGC received each cargo shipment.

13. With respect to each of the thirteen shipments, Plaintiff delivered an invoice to HGC.    The total invoice price for the thirteen shipments of apricots and pine nuts was $1,128,093.80.

14.    Upon its receipt of the shipments of dried apricots and pine nuts from Plaintiff, HGC transferred and sold those food products to Sunrise Commodities Corp., Inc. ("Sunrise") a New Jersey wholesaler and distributor of food products.

15.    The lease for the use and occupation of the premises located at 1200 West Blancke Street was originally executed on June 1, 1996 and was between SONA and 1200 West Blancke Associates LLC.

16.    SONA was a New Hampshire corporation that was dissolved by the State of New Hampshire on December 7, 2001.

17.    On July 14, 2011, this Court entered a judgment against HGC, and in favor of Plaintiff, in the amount of $1,123,500.00.

**4.     CONTESTED FACTS** (Proofs shall be limited at trial to the contested facts set forth. Failure to set forth any contested facts shall be deemed a waiver thereof.)

**Plaintiff intends to demonstrate the following contested facts at trial:**

1.     No capital was invested into HGC.

2.     In October 2009 Cavusoglu, through HGC, placed 13 orders with Plaintiff for dried apricots and pine nuts a purchase price of $1,125,000.00.

3.     Between October 26, 2009 and December 10, 2009, Plaintiff shipped cargoes of apricots and pine nuts to HGC with an approximate value of $1,125,000 and issued invoices to HGC for same. HGC received each and every cargo shipment. With respect to each of the thirteen cargoes, Plaintiff's bank delivered documents of title to HGC's bank, to wit, PNC Bank with instructions only to release the documents in exchange for HGC's undertaking to pay within 45 days.

4.     With respect to each of the thirteen shipments, Plaintiff delivered an invoice to HGC.

5.     With respect to each cargo, HGC, by Cavusoglu, delivered its written undertaking to pay Plaintiff's draft within 45 days of the bill of lading date. HGC failed to pay Plaintiff's drafts and has otherwise failed to pay for the goods sold, delivered, and accepted without objection.

6.     On September 30, 2009 HGC had a negative balance in its operating account at Chase Bank.

7.     At the time the Defendant, through HGC, placed the orders for $1,125,000 in dried apricots and pine nuts with Plaintiff, HGC had already defaulted in the payment of invoices owing to two other Turkish food exporters. Specifically, HGC was indebted to a vendor named

Erenler in the amount of $500,000 and to another vendor named Sekerciler in the amount of $50,000.

8.    At the time the Defendant, through HGC, placed the orders for $1,125,000 in dried apricots and pine nuts with Plaintiff, a judgment in the amount of $10,911.79 had been entered against Defendant personally by Superior Court of New Jersey in favor of a food wholesaler name Great Lakes International Trading, Inc., based in Traverse City, Michigan.

9.    At the time the Defendant, through HGC, placed the orders for $1,125,000 in dried apricots and pine nuts with Plaintiff, the Defendant's home in New Hampshire was in foreclosure by its mortgagor Citibank.

10.    At the time the Defendant, through HGC, placed the orders for $1,125,000 in dried apricots and pine nuts with Plaintiff, he was personally indebted to a food wholesaler and supplier by the name of Holsa Inc. in the amount of $600,000.

11.    Upon its receipt of the shipments of dried apricots and pine nuts from Plaintiff, HGC transferred and sold those food products to Sunrise Commodities, Inc. ("Sunrise") a New Jersey wholesaler and distributor of food products.

12.    HGC realized no less than $600,000 from Sunrise from the sale of the dried apricots and pine nuts it received from Plaintiff. HGC did not remit back to Plaintiff any of the proceeds it received from the sale of the dried apricots and pine nuts ordered and received from Plaintiff.

13.    At all times during HGC's existence Defendant controlled and had signatory authority over HGC's bank accounts and financial affairs.

14.    In 2010 Defendant made no less than 85 cash withdrawals from HGC's bank accounts totaling $447,000.00.

15. HGC operated at a loss every year from its incorporation in 2006 until it was dissolved it in 2011.

16. After HGC received proceeds from the sale of dried apricots and pine nuts delivered by Plaintiff, on numerous occasions HGC transferred money to the Defendant's wife, Robin Cavusoglu, and the Defendant's children.

17. Defendant, through HGC and other entities he owned and controlled, engaged in the food wholesale, distribution, warehousing and packaging businesses with Sunrise for approximately 20 years. During this time an arrangement was reached with Sunrise whereby in exchange for Sunrise's financial subsidization and promises to purchase food products, including Sunrise's payment of HGC's $22,000.00 monthly rental obligation directly to the landlord of the 1200 West Blancke Street headquarters, Cavusoglu would transfer and sell to Sunrise large quantities of Turkish food products (including dried apricots and pine nuts) that HGC imported from Turkish food producers (including Plaintiff) for a price that was 30% - 40% below the actual cost.

18. From 2000-2011 Sunrise paid the rent and utilities at 1200 West Blancke Street, Linden, New Jersey, whereat the entities owned and/or controlled by Cavusoglu, including HGC, conducted their business. The 1200 West Blancke Street location was the headquarters for HGC.

19. SONA was a New Hampshire corporation that was dissolved by the State of New Hampshire on December 7, 2001.

20. The State of New Jersey revoked SONA's status as a foreign corporation authorized to do business in New Jersey on April 6, 2005. The Defendant continued to renew the lease for 1200 West Blancke in the name of SONA as late as 2008.

21.     On July 14, 2011, this Court entered a judgment against HGC HGC, and in favor of Plaintiff, in the amount of $1,123,500.00.

22.     Cavusoglu maintained joint bank accounts at Chase Bank with two Turkish individuals named Galip Unsalan ("Unsalan") and Moammer Biyik ("Biyik) into which Cavusoglu wrote numerous checks from HGC's account payable to Unsalan and Biyik.

23.     Unsalan has not been in the United States since 2003, was never an employee of any of the entities owned and controlled by Defendant, including HGC, Northeast Imports, CNC Trading and Sona, or otherwise entitled to payments therefrom.

24.     The Defendant dissolved HGC on June 28, 2011.

25.     At the time HGC was dissolved it was owed $500,000 by Sunrise.

26.     On December 18, 2012, several entities owned and controlled by the Defendant, including HGC and CNC Trading, received a $500,000 payment from Sunrise pursuant to a Settlement Agreement entered into by and among Sunrise and HGC, among others.

27.     The aforesaid $500,000 payment was received after Plaintiff obtained its judgment against HGC in the amount of $1,125,000.00. The payment was also received after Cavusoglu issued a sworn statement to Plaintiff in response to an information subpoena, served pursuant to the judgment, verifying that HGC had no assets.

28.     On October 15, 2013, Cavusoglu issued a sworn statement to Plaintiff wherein he falsely stated as follows: "Other than HGC, Cavusoglu has not been employed by or engaged in business with as a principal, partner, owner, agent, employee, buyer, seller, and/or independent contractor, in connection with the importing, selling and/or distribution of commodities, including but not limited to food products, from 2008 to the present."

29.     On that same day, October 15, 2013, the Defendant's wife, Robin Cavusoglu, formed a new entity in New Hampshire called CNC Warehousing LLC (hereafter "CNC Warehousing"), and registered that business with the State of New Jersey, claiming the same address as HGC, that being, 1200 West Blancke Street, Linden, NJ.

30.     In 2014, the dissolved entity Northeast Imports was used as an importing agent to clear food products and goods shipped into the United States from Turkey.

31.     In 2014 CNC Warehousing and Northeast Imports were doing business with HGC's former customers at HGC's former location.

32.     In order to induce Plaintiff to enter into business with HGC, the Defendant made the following representations to Plaintiff, which were knowingly false:

> (i) that HGC had been in business for over 20 years and that he was personally trustworthy;
>
> (ii) that it is not the practice in the U.S. food-import business to obtain letters of credit or cash against documents;
>
> (iii) that he personally intended to ensure that Aksut & Sons was promptly paid;
>
> (iv) that relationships in the industry were based on trust and Aksut & Sons should trust him;
>
> (v) that HGC was the supplier for "big players" in the American food distribution industry including Mariani, Great Lakes International and Sunrise Commodities;
>
> (vi) that HGC was processing and packaging the goods themselves and distributing goods themselves;
>
> (vii) that HGC was in control of 70%-80% the apricot market in the United States.

33. HGC had only been in business for four years and was, at all times, undercapitalized and insolvent.

34. Letters of credit and cash against documents are common financing devices in the US food-import business.

35. HGC did not control anywhere near 70%-80% of the apricot market.

36. HGC was not a supplier of Great Lakes International. Indeed, at the time he represented to Kanyilmaz that he was a large supplier to Great Lakes, Great Lakes had in fact already sued Cavusoglu and his wife and obtained a judgment against them both for non-payment of goods delivered.

37. In order to create the appearance of solvency and legitimacy, and to induce Plaintiff to begin a business relationship with HGC, Defendant, with the knowledge, consent and financial support of Sunrise, agreed to place an initial order of approximately $50,000 with Plaintiff on a "cash against documents" basis.

38. HGC did not have $50,000 with which to pay for the goods in advance of receiving same, and obtained said funds from Sunrise.

39. The Defendant and Sunrise conspired to place an initial order for $50,000 on a cash against documents basis, whereby Sunrise advanced the $50,000, in order to falsely indicate to Plaintiff that HGC was a substantial and credible going concern, when in fact both HGC and the Defendant were in massive debt.

40. In a series of telephone calls in September and October of 2009, the Defendant attempted to convince Mr. Kanyilmaz of his creditworthiness and personal integrity. Defendant represented that it was his intention to pay immediately, that he had clients who trusted him enough to send him a bill of lading before shipment, and that Mr. Kanyilmaz should rely on his

word and trust his good intentions. Defendant stated that he had never breached a customer's trust.

41.   These representations were false and Defendant knew them to be false.

42.   Defendant had no intention of paying promptly. He had no intention of paying at all.

43.   Defendant knew that any waiver of Plaintiff's letter of credit or cash against documents requirement would be in reliance on his personal representations.

44.   In reliance on Defendant's representations set forth above, and his promises that he would personally see to prompt payment, Plaintiff agreed to waive the letter of credit or cash against documents requirement and instead agreed to a 45-day payment term.

45.   Defendant altered and falsified the Plaintiff's invoices so as to appear to be the same as the original ones issued by Plaintiff, but with substantially reduced prices for the food products, and then forwarded the falsified invoices to Sunrise.

46.   Defendant falsely reported his income to the IRS.

47.   In connection with the dissolution of HGC Defendant falsely reported to the State of New Jersey that HGC had no assets.

48.   Defendant failed to pay withholding taxes for up to nine employees of HGC and CNC Trading for 15 years.

49.   While it HGC was indebted to Plaintiff Defendant transferred hundreds of thousands of dollars in HGC's accounts to or for the benefit of himself, his wife, his children and other entities that he owned, dominated and controlled, including CNC, Northeast Imports, Celil Ithracat, EFE Specialty Stores, Linden Packaging, Zeyno Trucking.

50.   All of the entities owned and controlled by Defendant were shell companies.

51.    Defendant maintained fictitious joint bank accounts with individuals named Galip

Unsalan and Moammer Biyik and used those accounts to funnel funds away from HGC and its

creditors, including Plaintiff.

52.    That Robin Cavusoglu was complicit in the defrauding of Plaintiff.

## Defendant intends to demonstrate the following contested facts at trial:

1.    In or about 2009, Plaintiff was looking for a new U.S. distributor and approached
Aret Museoglu for recommendations for companies that might be able to distribute large
quantities of apricots in the United States.

2.    At the time of the discussion, Aret Museoglu worked for Kadouri, which owed
Plaintiff a substantial sum of money.

3.    Kadouri ultimately went out of business without paying its debt to Plaintiff;
however, Plaintiff has not made any efforts to recover these amounts.

4.    Plaintiff conducted virtually no due diligence or review of HGC or Defendant
before entering into a business relationship with HGC. Plaintiff did not conduct a judgment
search, review credit reports, contact third-party customers, or otherwise take any steps to verify
the information purportedly given by Museoglu and/or Defendant.

5.    The request for 45-day payment terms was customary and Plaintiff did not rely on
any representations by Defendant in agreeing to such terms.

6.    To the extent that Plaintiff relied on alleged representations by Defendant and/or
Museoglu, Plaintiff was unreasonable.

7.    Plaintiff was aware that HGC did not have sufficient current assets to cover the
cost of the goods and that is precisely why it agreed to 45-day payment terms.

8.    Plaintiff did not request a personal guaranty or any other security from Defendant.

9.    HGC went out of business when it lost its largest customer, Sunrise Commodities
Corp.

10.    Defendant contributed virtually all of his personal assets in an effort to keep HGC
afloat including, without limitation, contributing nearly $450,000 from mortgages taken on his
personal residence.

11.    As HGC began to fail, Defendant often had to pay creditors in cash.

12.    To the extent that testimony or evidence regarding bank accounts after January

2010 is permitted, the vast majority of Defendant's payments from HGC's accounts were for legitimate business purposes.

13. To the extent that testimony or evidence regarding the Sunrise Settlement is permitted, the monies paid in accordance thereto were properly paid to entities other than HGC.

14. Plaintiff is a Turkish corporation that has been doing business in New Jersey and throughout the United States since at least 2006; but, has never registered to do business within the State.

15. Plaintiff is a large, international company with between 600 to 1,000 employees at any time and annual sales in excess of $10 million. They conduct business throughout the world including Europe, Australia, Japan, Dubai, and the United States.

16. At all relevant times, Plaintiff was represented in the United States by Barbaros Karaahmet. Mr. Karrahmet was a "consultant" employed by Plaintiff who had authority to make agreements in Plaintiff's name and set up other corporation or firms in Plaintiff's name. Mr. Karaahmet represented Plaintiff's interests in the United States.

17. Although Mr. Karaahmet was not representing Plaintiff as an attorney, he is a licensed to practice in the State of New York and is a partner with the law firm of Herrick Feinstein, LLP. He has an LLM degree from NYU School of Law and is a "co-author of the Turkish Law chapter in the book 'International Commercial Secure Transactions'". Mr. Karaahmet purportedly has specific experience in advising clients with respect to "cross-border transactions" and "international trade."

18. Prior to HGC, Plaintiff's only U.S. customer was Kadouri International Foods, Inc. ("Kadouri"); however, Kadouri was a small buyer and, in 2009, "went bankrupt" and "stopped existing". When Kadouri went out of business, it owed money to Plaintiff; however, Plaintiff did nothing to pursue this debt because it understood sometimes companies just fail.

19. Before shipping to a new customer, Plaintiff did not run credit reports, did not conduct a judgment search, and did not request any financials from the prospective customer.

20. There are dozens of paid and free websites that Plaintiff could have used to determine the volume of goods that HGC had previously imported including, by way of example, GreatExportImport.com, Zepol.com, and Piers.com.

21. With new customers, Plaintiff generally required a letter of credit or cash against documents because it understood that this would ensure payment. Plaintiff did not have any set standard for how long a new customer would be required to keep these terms, however, and granting 45-day terms to large buyers was "common practice" and a request for such terms was not "unusual".

22. Plaintiff never asked any client for a personal guarantee.

23. Prior to shipping over $1 million in goods to HGC, in approximately August 2009, Plaintiff had one 15 minute telephone call with Aret Museoglu, an employee of Kadouri.

24. Plaintiff had never even met Mr. Museoglu.

25. The request for 45-day terms was "common" in the industry.

**5.   FACT WITNESSES:** (Aside from those called for impeachment purpose, only the fact witnesses set forth by name and address may testify at trial. No summary of testimony is necessary.)

**Plaintiff intends to call the following witnesses:**

1.   Oguz Kanyilmaz
2.   Huseyin Cavusoglu
3.   Robin Cavusoglu.

Subject to revision and amendment.

**Defendant identifies the following witnesses that may be called at the time of trial.
Defendant reserves the right to call some, all, or none of the foregoing witnesses in order to respond to issues presented by Plaintiff.**

1.   Huseyin Cavusoglu
2.   Aret Museoglo
3.   Barbaros Karaahmet
4.   A Corporate Representative of Natural Food Source, Inc.

**6.    EXPERT WITNESSES:** (No expert shall be permitted to testify at trial unless identified below by name and address and unless the expert's curriculum vitae and report are attached hereto. An expert's qualifications may not be questioned unless the basis therefor is set forth herein.)*

**Not Applicable. Neither party intends to call an expert witness at the time of trial.**

7.    **DEPOSITION:** Not later than _____, any party seeking to offer evidence by deposition shall so advise the opposing parties. Within 14 days thereof, all parties are directed to prepare a joint agreed statement, in narrative form, of the testimony which would be given by the deponent if called under oath. No colloquy between counsel shall be included. The agreed statement is not a concession of the factual accuracy of the deponent's testimony. Absent prior leave of Court, no deposition testimony may be offered except as provided herein.

Within 14 days of the first date above, the parties shall simultaneously exchange and submit to the Court any objections to the deposition testimony proposed above. The objections shall note, separately as to each such challenged portion of the deposition, applicable cases or rules which underlie the objection. If a party fails to comply with this paragraph, the challenged deposition testimony shall be deemed admitted.

**8.    EXHIBITS** (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Objections to authenticity are deemed waived unless such objections are set forth).*

**A.    Plaintiff:** See Attached List.

**B.    Defendant's objections to authenticity:** See Defendants objections on attached list.

**A.    Defendant:** See Attached List. Defendant further reserves the right to rely upon any exhibits admitted by Plaintiff or such other documents that may be necessary for impeachment purposes.

**B.    Plaintiff's objections to authenticity:**

*The exhibit lists should follow this page.

**9.    SINGLE LIST OF LEGAL ISSUES** (All issues shall be set forth below. The parties need not agree on any issue. Any issue not listed shall be deemed waived.)

**Plaintiff's List of Legal Issues to Be Determined At Trial**

1. FRAUD.

   a. Plaintiff will establish that Defendant made material representations and omissions of present or past facts that he knew were false (or should have been disclosed) and did so with intent that those representations and omissions be relied upon by Plaintiff. Stochastic Decisions, Inc. v. DiDemenico, 236 N.J. Super. 388, 395, 565 A.2d 1133 (App. Div. 1989).

   b. Plaintiff will establish that it detrimentally relied upon the representations and omissions of Defendant. Stochastic Decisions, Inc. v. DiDemenico, 236 N.J. Super. 388, 395, 565 A.2d 1133 (App. Div. 1989).

   c. Plaintiff will establish that its reliance on Defendant's representations and omissions was reasonable.

   d. Plaintiff will establish that at that time Defendant ordered $1,125,000 in food products from Plaintiff, and promised to pay for same, that he had no intention of fulfilling it. Van Dam Egg Co. v. Allendale Farms, Inc., 199 N.J. Super. 452, 457, 489 A.D.2d 1209 (App. Div. 1985); see also Lo Bosco v. Kure Engineering, Inc., 891 F. Supp. 1020, 1031-32 (D.N.J. 1995) ("[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud . . . ."); *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 623 (D.N.J. 1999).

   e. Plaintiff will establish that Defendant sought to and did obtain an undue advantage from his misrepresentations and omissions. *Automated Salvage*, 106 F. Supp. 2d. at 624.

   f. Plaintiff will demonstrate that, prior to ordering $1,125,000 in food products from Plaintiff, Defendant had a pattern and practice of using undercapitalized shell corporations to defraud foreign food exporters.

   g. Plaintiff will demonstrate that, prior to ordering $1,125,000 in food products from Plaintiff, Defendant had a longstanding arrangement with his only customer whereby Defendant sold such products substantially below cost such that Defendant knew he would not have funds available to pay for the ordered products.

   h. Plaintiff will demonstrate that Defendant, by the immediate siphoning away from HGC hundreds of thousands of HGC's funds, including all cash proceeds realized from the sale of Plaintiff's food products, to or for the benefit of Defendant, including to personal accounts owned or controlled by Defendant and/or other corporate entities that he controlled, had no present intention of paying for them when he ordered them.

   i. Plaintiff will demonstrate that Defendant misappropriated and converted the property and funds of HGC. Hirsch v. Phily, 4 N.J. 408, 416, 73 A.2d 173 (1950).

2. PIERCING THE CORPORATE VEIL.

   a. Plaintiff will demonstrate that the corporate veil of HGC Commodities, a judgment debtor to Plaintiff in the amount of $1,123,000, should be pierced and that Defendant should be held liable for the debts of HGC.

   b. Plaintiff will demonstrate that Defendant used HGC to perpetrate to defeat the ends of justice, to perpetrate a fraud, to accomplish a crime, or otherwise to evade the law. Karo Mktg. Corp., Inc. v. Playdrome America, 331 N.J. Super. 430, 442, 752 A.2d 341 (App. Div. 2000).

   c. Plaintiff will demonstrate that (i) there was such unity of interest and ownership between Defendant and HGC that that the separate personalities of the corporation and the individual no longer exist and (ii) the adherence to the fiction of separate corporation existence would sanction a fraud or promote injustice. The Mall at IV Group Properties, LLC v. Roberts, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005)

   d. Plaintiff will demonstrate that (1) HGC was grossly undercapitalized, (2) Defendant failed to observe corporate formalities, (3) HGC was insolvent at all relevant times, (4) Defendant siphoned funds of the corporation, (5) there were non-functioning other officers or directors and absence of corporate records, and (6) HGC was is merely a façade for the operations of Defendant. Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988).

3. Punitive Damages.

   Plaintiff will demonstrate that Defendant's conduct was so wanton, reckless and/or malicious that an award of punitive damages is warranted. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 477 A.2d 1224 (1984), Bell Atlantic Network Services, Inc. v. P.M. Video Corp. 322 N.J.Super. 74 (App. Div. 1999).

4. Attorneys' Fees.

   Plaintiff will demonstrate an entitlement to an award of attorneys' fees. Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc., 195 N.J. 457 (2008).

**Defendant's List of Legal Issues to Be Determined At Trial**

1. FRAUD: Plaintiff cannot demonstrate by clear and convincing evidence the elements of fraud.

   a. Plaintiff cannot claim reliance on representations by a third-party, Aret Museoglu, to sustain a claim of fraud against Defendant.Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co., 393 N.J. Super. 492, 507-08 (App. Div. 2007); In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, Civ. Ac. No. 2:06-CV-5774(SRC), 2009 WL 2043604, at *33 (D.N.J. July 10, 2009).

   b. The alleged "misrepresentations" were mere "puffery" that cannot support a claim

for fraud. <u>Suarez v. E. Int'l Coll.</u>, 428 N.J. Super. 10, 29 (App. Div. 2012).

c.  The alleged "misrepresentations" were not "material" and were not actually relied upon by Plaintiff. <u>Voilas v. Gen. Motors Corp.</u>, 170 F.3d 367, 376 (3d Cir. 1999); <u>Walid v. Yolanda for Irene Couture, Inc.</u>, 425 N.J. Super. 171, 180 (App. Div. 2012).

d.  Plaintiff's purported reliance on Cavusoglu or Museoglu's statements was not reasonable. <u>Carroll v. Cellco P'ship</u>, 313 N.J. Super. 488, 502 (App. Div. 1998); <u>Union Ink Co., Inc. v. AT&T Corp.</u>, 352 N.J. Super. 617, 646 (App. Div. 2002); <u>Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.</u>, 913 F. Supp. 837, 844 (D.N.J. 1995).

e.  Defendant had not duty or obligation to disclose HGC's financial ability to pay for the goods. <u>Allesandra v. Gross</u>, 187 N.J. Super. 96 (App. Div. 1982); <u>Maertin v. Armstrong World Indus., Inc.</u>, 241 F. Supp. 2d 434, 461 (D.N.J. 2002).

2.  PIERCING THE CORPORATE VEIL: Plaintiff cannot demonstrate by clear and convincing evidence a claim to pierce the corporate veil.

a.  Plaintiff cannot demonstrate that HGC was used to perpetuate a fraud. <u>Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc.</u>, 899 F.Supp. 2d 303, 308 (D. NJ. 2012)(citing <u>Marascio v. Campanella</u>, 298 N.J.Super. 491, 502, 689 A.2d 852, 858 (1997)); <u>Melikian v. Corradetti</u>, 791 F.2d 274, 281 (3d Cir.1986) (internal citation omitted).

b.  Plaintiff cannot demonstrate that HGC was a mere alter-ego of Defendant. <u>See Rowen Petroleum Properties, LLC</u>, <u>supra</u>; <u>Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ.</u>, 332 F.3d 188, 194 (3d Cir. 2003).

c.  Plaintiff's claim of improper payments from the Company's account does not support piercing the corporate veil. <u>Kaplan v. First Options of Chicago, Inc.</u>, 19 F.3d 1503, 1522 (3d Cir. 1994); <u>Qugen, Inc. v. Chawla</u>, No. A-3987-09T2, 2011 WL 6003971, at *5 (App. Div. Dec. 2, 2011).

d.  Defendant's alleged post-transaction conduct cannot support a claim for piercing the corporate veil; rather, this conduct is only actionable, if at all, under the Uniform Fraudulent Transfer Act, <u>N.J.S.A.</u> § 25:2-20, <u>et seq.</u> ("UFTA"). <u>See Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 173 (2005); <u>SASCO 1997 NI, LLC v. Zudkewich</u>, Civ. Ac. No. A-2083-05T2, 2007 WL 1827257, at *9 (App. Div. June 27, 2007).

3.  ALLOCATION OF FAULT: Plaintiff's recovery, if any, must be reduced by its own percentage of fault and that of any third-parties.

a.  New Jersey's Comparative Negligence Act (the "Act") requires the trier-of-fact to determine the percentage of each party's fault. <u>Gennari v. Weichert Co. Realtors</u>,

148 N.J. 582, 608 (1997). The Act encompasses all kinds of fault regardless of the "description of the action." Id. at 609. Under the Act, each party is responsible only for the percentage of damages directly attributed to their own fault, unless they are determined to be more than 60% at fault for the total loss. N.J.S. 2A:15-5.3. Any award must also be reduced by Plaintiff's comparative fault. N.J.S. § 2A:15-5.1.

b. In Blazovic v. Andrich, 124 N.J. 90 (1991), the Supreme Court explained "consistent with the evolution of comparative negligence and joint-tortfeasor liability in this state, we hold that responsibility for a plaintiff's claimed injury is to be apportioned according to each party's relative degree of fault, including the fault attributable to an intentional tortfeasor." Id. at 107. The court rejected the notion that "intentional conduct is 'different in kind' from both negligence and wanton and willful conduct, and consequently cannot be compared with them." Id. at 106. Rather, "[t]he different levels of culpability inherent in each type of conduct will merely be reflected in the jury's apportionment of fault." Id. It is further clear that the allocation of fault between all culpable parties is not dictated by Plaintiff's election not to sue certain of the actual wrong-doers directly. See Lee's Hawaiian Islanders, Inc. v. Safety First Products, Inc., 195 N.J. Super. 493, 506 (App. Div. 1984).

c. Even if Plaintiff is successful, the law requires liability to apportioned against all potentially responsible parties including Plaintiff, Defendant, and any third-parties that Plaintiff claims contributed to its loss including, without limitation, Aret Museoglu and Sunrise Commodities Corp.

## 10.    CONCLUSION

A.    MISCELLANEOUS (Set forth any matters which require action or should be brought to the attention of the Court.)

B.    TRIAL COUNSEL: (List the names of trial counsel for all parties.)

Plaintiff: Steven Soulios and Luke Tynan

Defendant: Nicholas Vytell, Esq., and Joseph P. McNulty, Esq.

C.    JURY TRIALS: Not later than **AUGUST 31, 2015.**

1. Each party shall submit to the District Judge and to opposing counsel a trial brief in accordance with Local Civil Rule 7.2(b)(SEE ATTACHED "RIDER ON LENGTH OF BRIEFS") with citations to authorities cited and arguments in support of its position on all disputed issues of law. THE BRIEF SHALL ALSO ADDRESS ANY ANTICIPATED EVIDENCE DISPUTE. In the event a brief is not submitted, the delinquent party's pleading may be stricken.

2. Any hypothetical questions to be put to an expert witness on direct examination shall be submitted to the District Judge and to opposing counsel.

3. Each party shall submit to the District Judge and to opposing counsel proposed voir dire.

4. Plaintiff shall submit to opposing counsel, in writing, proposed jury instructions. Each instruction shall be on a separate sheet of legal sized paper and shall be numbered in sequence. Each instruction shall include citations to authorities, if any.

Within 7 days of the above, opposing counsel shall, on the face of the instructions submitted by plaintiff, set forth any objections to the proposed jury instructions and/or proposed counter- instructions.

E. BIFURCATION(When appropriate, liability issues shall be severed and tried to verdict. Thereafter, damage issues will be tried to the same jury.)

F. ESTIMATED LENGTH OF TRIAL ____7 DAYS____ .

G. TRIAL DATE:___ Monday, September 14, 2015 at 10:00 A.M.

AMENDMENTS TO THIS FINAL PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

Steven A. Soulios, Esq.
RUTA SOULIOS & STRATIS LLP
101 Town Center Drive, Suite 111
Warren, New Jersey 07059
Tel. (908) 769-4250
ssoulios@rutasoulios.com
*Attorneys for Plaintiff, Cevdet Aksut Ve Ogullari Koll, Sti*

Nicholas A. Vytell, Esq.
Joseph P. McNulty, Esq.
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
Tel.    (908) 848-6300
Fax    (908) 848-6310
nvytell@cmk.com
*Counsel for Defendants, Huseyin Cavusoglu*

8/17/15

MARK FALK
UNITED STATES MAGISTRATE JUDGE

## RIDER ON LENGTH OF BRIEFS

The attention of the parties is directed to Local Civil Rule 7.2. Briefs shall not exceed 40 ordinary typed or printed pages ***" (emphasis added). This page limitation shall be strictly enforced.

When submitting a brief in accordance with this rule a party may request special permission to submit an additional brief on any point or points deemed to need additional pages of argument. This request must be made by letter not to exceed two ordinary typed or printed pages and must be submitted with the brief.

The Court shall, in its sole discretion, decide whether to allow additional briefing on review of the party's brief and letter.

The Court also reserves the right, in its sole discretion, to require additional briefing on any point or points after review of the written submissions o the parties or oral argument.

## Joint Trial Exhibit List

| Exhibit # | Name/ Description | Doc. No./ Bates Range | Objections |
|---|---|---|---|
| **Plaintiff's Proposed Trial Exhibits & Defendant's Objections** | | | |
| Exhibit 1 | Cevdet Aksut Judgment against HGC | | |
| Exhibit 2 | Settlement Agreement between Cevdet Aksut and HGC | HC 0287 - 0298 | |
| Exhibit 3 | Fentex Complaint v Cavusoglu, et al. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 4 | Confession of Judgment from Fentex case | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 5 | New Hampshire Dept of Corporations record for HGC Commodity | Public Record | |
| Exhibit 6 | Holsa Complaint v. Cavusoglu et al | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 7 | NYS Division of Corporations Entity Status re: Northeast Imports, Inc. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 8 | Certificate of Incorporation of Linden Packaging Corp. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 9 | Lease for 1200 W. Blancke St., 1996, SONA Trading Corp. | HC 0646 - 690 | |
| Exhibit 10 | New Hampshire Dept of Corporations Record for Sona Trading Corp. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |

**Joint Trial Exhibit List**

| | | | |
|---|---|---|---|
| Exhibit 11 | New Jersey Dept of Corporations record for Sona Trading Corp. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 12 | Great Lakes v. Cavusoglu, Order for Default Judgment | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 13 | Cevdet Aksut Invoices to HGC | Aksut 080-106 | |
| Exhibit 14 | HGC Invoices to Sunrise | Aksut 087-093 | |
| Exhibit 15 | NJ Dept. of Revenue Status Report of Linden Packaging | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 16 | NYS Division of Corporations Entity Status re: EFE Specialty Market Inc. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 17 | Questions for Business Entity—HGC | HC 0232 – 0235 | |
| Exhibit 18 | Confidential Settlement Agreement for Cavusoglu and SONA/HGC/CNC | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay; |
| Exhibit 19 | 2010 Verified Complaint | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 20 | Chase Bank statements from account held jonty by Defendant and Moammar Biyik | | Not identified with sufficient specificity; FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; |
| Exhibit 21 | New Hampshire Dept of Corporations record for CNC Warehousing, LLC | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |

## Joint Trial Exhibit List

| Exhibit 22 | Northeast Imports Inc. – Customs Records | SJ Ex. Z | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
|---|---|---|---|
| Exhibit 23 | NYS Division of Corporations Entity Status re: Northeast Imports, Inc. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 24 | HGC Chase bank statement ending 9404 June 2010 | Aksut_C hase 0471 – 0508 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; |
| Exhibit 25 | Fentex $1,000,000.00 Judgement against Cavosolgu | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 26 | New Hampshire Division of Corporations Entity Status re: HGC Commodities | Public Record | Not identified with sufficient specificity; |
| Exhibit 27 | Purchase Order with signature attributed to Andrew Rosen | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| 28 | Defendant's Answer to Complaint | | |
| Exhibit 29 | Corporate Division page showing NH Corporation SONA dissolved | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 30 | NJ Revoked SONA's status as foreign entity authorized to do business in NJ | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/Waste; FRE 802 – Hearsay |
| Exhibit 31 | Information regarding Great Lakes/Complaint | Public Record | Not identified with sufficient specificity; FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 32 | HGC's Answers to Questions for Business Entity sworn to by Cavusoglu, re. | | |

## Joint Trial Exhibit List

| Exhibit 33 | $500,000.00 Payment from Sunrise | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
|---|---|---|---|
| Exhibit 34 | Cavusoglu/HGC/Sunrise settlement agreement 12/18/2012 | HC 1052 – 1058 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 35 | Chase Bank Feb. 2013 statement for Unsalan/Cavusoglu | Cevdet_ Aksut 2008- 2024 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 36 | NH Corporations Division regarding CNC Warehousing LLC | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 37 | Shipments to 1200 W Blancke including an 80 ton shipment on April 27 2014 | Produced in related action | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 38 | Cavusoglu 2009 Federal tax returns | HC 997- 1012 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 39 | Cavusoglu 2010 Federal tax returns | HC 1012- 1012 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 40 | Cavusoglu 2011 Federal tax returns | HC 1027- 1028 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 41 | HGC Chase bank statement ending 9404 July 2010 | Aksut_C hase 0509 – 0534 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 42 | Huseyin & Robin Cavusoglu Chase bank statement acct ending 9401 for period May – June 2012 | Aksut_C hase 2702 – 2717 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 43 | HGC Chase bank statement ending 9404 April 2010 | Aksut_C hase 0363 – 0431 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |

## Joint Trial Exhibit List

| Exhibit 44 | HGC Chase bank statement ending 9404 November 2010 | Aksut_C hase 0656 – 0686 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
|---|---|---|---|
| Exhibit 45 | Huseyin & Robin Cavusoglu Chase bank statement acct ending 9401 for period Aug. 2011 to Sept. 2011 | Aksut_C hase 02519 – 02543 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 46 | Sunrise purchase order to Holsa | Public Record | Not identified with sufficient specificity; FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 404(b) – Prior Bad Acts; FRE 802 – Hearsay |
| Exhibit 47 | Check from HGC to Aret Museoglu | | Not identified with sufficient specificity |
| Exhibit 48 | Emails exchanged between Kanyilmaz and Robin Cavusoglu from Jan. 2010 | | |
| Exhibit 49 | Estimated Summary Return of HGC | HC 227-231 | |
| Exhibit 50 | CNC Warehousing and HGC invoices | HC 1083-1101 | |
| Exhibit 51 | HGC Application for Tax Clearance | HC 0225 | |
| Exhibit 52 | HGC Answers to Information Subpoena | HC 232 | |
| Exhibit 53 | HGC bank statements from PNC Bank | HC 918-966 | |
| Exhibit 54 | HGC Federal Tax return for 2009 | HC 0443 – 0471 | |

## Joint Trial Exhibit List

| Exhibit 55 | HGC Chase bank statement ending 9404 September 2009 | HC 0020 – 0023 | |
|---|---|---|---|
| Exhibit 56 | Chase letter to Cavusoglu | HC 1036 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 57 | HGC Chase bank statement ending 9404 January 2010 | Aksut 121-192 | |
| Exhibit 58 | HGC Chase bank statement ending 9404 February 2010 | Aksut 193-296 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 59 | HGC Chase bank statement ending 9404 March 2010 | Aksut | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 60 | PNC Bank Documentary Collection Letters Oct 2009 | HC 0641 – 0644 | |
| Exhibit 61 | IRS Notice to HGC dated 1/11/2011 | HC 0477 – 0478 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 62 | IRS Notice to HGC dated 12/8/2010 | HC 0479 – 0480 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 63 | HGC NJ State Tax Return 2010 | HC – 0489 – 0509 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 64 | HGC Chase bank statement ending 9404 June 2009 | HC 0024 – 0029 | |
| Exhibit 65 | IRS Notice of Intent to Levy to HGC dated 12/10/2010 | HC 0108 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |

## Joint Trial Exhibit List

| Exhibit 66 | HGC Federal Tax return for 2010 | HC 0109 – 0115 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
|---|---|---|---|
| Exhibit 67 | HGC Invoices to Sunrise Commodities Nov/Dec 2009 | HC 0082 – 0107 | |
| Exhibit 68 | Sunrise Fax to HGC 3/26/09 Re: Certificate of Analysis | HC 0091 | |
| Exhibit 69 | Cevdet Aksut Quality Control Report | HC 0098 – 0100 | |
| Exhibit 70 | Fax from Robin Cavusoglu to Cortez 7/13/11 | HC 0212 – 0214 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 71 | Fax from Huseyin Cavusolu to Richard Bailey 6/28/11 with Certificate of Dissolution of HGC | HC 0215 - | |
| Exhibit 72 | HGC Federal and State Tax Return 2009 | HC 0236 - | |
| Exhibit 73 | Chase Bank Dec 2012 statement for Unsalan/Cavusoglu | Aksut_C hase 1960 – 1980 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 74 | Chase Bank Jan 2013 statement for Unsalan/Cavusoglu | Aksut_C hase 1991 – 2008 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 75 | Chase Bank Mar 2013 statement for Unsalan/Cavusoglu | Aksut_C hase 2025 – 2041 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 76 | Certificate of Incorp. CNC Trading Dist. & Warehousing | Ex. D to Cavusogl u Dep. 1/10/201 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |

## Joint Trial Exhibit List

| Exhibit 77 | NJ Dept. of Revenue Status Report of CNC Trading, Dist. & Warehousing Inc. | Ex. I to Cavusogl u Dep. 1/10/201 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
|---|---|---|---|
| Exhibit 78 | NH Corporation Division Report on CNC Warehousing LLC | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 79 | NJ Dept. of Revenue Status Report of CNC Warehousing LLC | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 80 | Northeast Imports shipping records regarding 2014 goods to CNC Warehousing LLC | | Not identified with sufficient specificity; FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 81 | Letter from PNC Bank to HGC 10/8/2009 | HC 0928 | |
| Exhibit 82 | Letter from PNC Bank to HGC 10/13/2009 | HC 0918 | |
| Exhibit 83 | Letter from PNC Bank to HGC 7/6/2007 | HC 0929 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE |
| Exhibit 84 | Letter from PNC Bank to HGC 9/26/2007 | HC 0930-31 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 85 | Letter from PNC Bank to HGC 10/19/2009 | HC 0927 | |
| Exhibit 86 | Letter from PNC Bank to HGC 11/13/2009 | HC 0926 | |
| Exhibit 87 | Letter from PNC Bank to HGC 12/14/2009 | HC 0925 | |

**Joint Trial Exhibit List**

| | | | |
|---|---|---|---|
| Exhibit 88 | Chase Bank statement for Linden Packaging Corp Acct ending 9413 for June 2011- October 2011 | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 89 | Chase Bank statement for Huseyin & Robin Cavusoglu acct. ending 9401 for August 2011 | Aksut_C hase_025 19 – 02543 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 90 | Documents Produced by Sunrise Commodities pursuant to subpoena | SC 001 – 180 | Authenticity; FRE 802 – Hearsay |
| Exhibit 92 | Chase Bank statement for Huseyin & Robin Cavusoglu acct. ending 9401 for July 2011 | Aksut_C hase 02496 – 02518 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 93 | Certificate of Incorporation of Zeyno Trucking, Inc. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 94 | NJ Dept. of Revenue Status Report of Zeyno Trucking, Inc. | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| Exhibit 95 | Linden Packaging Corp. Annual Report | Public Record | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 96 | Chase Bank statement for Huseyin & Robin Cavusoglu acct. ending 9401 for June 2011 | Aksut_C hase 02473 – 02495 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE |
| Exhibit 97 | Chase Bank statement for Huseyin & Robin Cavusoglu acct. ending 9401 for April 2011 | Aksut_C hase 02418 – 02447 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE |
| Exhibit 98 | HGC Chase bank statement ending 9404 January 2010 | Aksut_C hase 0121 - 0192 | |
| Exhibit 99 | HGC Chase bank statement ending 9404 March 2010 | Aksut_C hase 0297 – 0362 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |

## Joint Trial Exhibit List

| | | | |
|---|---|---|---|
| Exhibit 100 | HGC Chase bank statement ending 9404 February 2010 | Aksut_Chase 0193 – 0296 | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; |
| Exhibit 101 | Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant | | |
| Exhibit 102 | Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents | | |
| Exhibit 103 | Defendant's Supplemental Response to Plaintiff's Interrogatories and Requests for Production of Documents | | |
| **Defendant's Proposed Trial Exhibits & Plaintiff's Objections** | | | |
| D-1 | Notice of Deposition of Oguz Kanylmaz | | |
| D-2 | 30(b)(6) Deposition Notice of Plaintiff | | |
| D-3 | Settlement, Release, Waiver, and Non-Disclosure Agreement | | |
| D-4 | Judgment Against HGC | | |
| D-5 | Plaintiff's Complaint Filed on 5/14/12 | | |
| D-6 | Defendant's First Set of Interrogatories and Requests for Production of Documents to Plaintiff | | |
| D-7 | Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents | | |

## Joint Trial Exhibit List

| D-8 | Plaintiff's Supplemental Response to Defendant's Interrogatories and Requests for Production of Documents | | |
|---|---|---|---|
| D-9 | Email Correspondence between HGC and Plaintiff in October and November 2009 (translated) | C. Aksut 38-78 | |
| D-10 | Website Print-out from Piers.com | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| D-11 | Website Printout From Zepol.com | | FRE 402 – Irrelevant; FRE 403 – Prejudice/Confusion/ Waste; FRE 802 – Hearsay |
| D-12 | Aksut Invoices and Related Documents for shipments on 9/7/2009 | C-Mtn Exhibit 10 | |