**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CEVDET AKSÜT VE OĞULLARI KOLL. STI,**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**HUSEYIN T. CAVUSOGLU,**<br><br>   **Defendant.** | Civ. No. 12-2899 (WJM)<br><br>**OPINION** |

**<u>WILLIAM J. MARTINI, U.S.D.J.</u>**

   This matter comes before the Court on the parties' *in limine* motions. For the reasons set forth below, the Court **GRANTS** Cevdet Aksut Ve Ogullari Koll, Sti's ("Plaintiff") motion to preclude the testimony of a Natural Food Source corporate representative and **DENIES** the remainder of Plaintiff's motions. Also, the Court **GRANTS** Huseyin Cavusoglu's ("Defendant") motion to preclude any testimony or evidence regarding Defendant's alleged re-entry into the food import business, **GRANTS in part** and **DENIES in part** Defendant's motion to preclude Plaintiff from seeking damages not sought in the Complaint, and **DENIES** the remainder of Defendant's motions.

**I.  BACKGROUND**

   Because the Court writes this Opinion for the benefit of the parties only, it will not describe the factual and procedural background of this case at length. This is a civil case (the second of three) brought by Plaintiff, a Turkish corporation, to recover payment for a shipment of exported food commodities. The first case was settled between the Plaintiff and HGC, Defendant's company. *See Cevdet Aksut Ve Ogullari Koll, Sti's v. HGC Commodities Corporation, et al.* ("Cevdet I"), No. 10-CIV-2750 (WJM), ECF No. 28. However, shortly after the settlement and prior to payment of the agreed-upon sum, Defendant allegedly dissolved HGC. Consequently, pursuant to the settlement agreement, judgment in the full amount of the claim was entered against HGC. *See Cevdet I*, ECF No. 29. Plaintiff then

brought the instant action against Defendant for fraud, piercing the corporate veil, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and conversion. The parties cross-moved for summary judgment. In an opinion and order dated July 14, 2015, the Court denied Plaintiff's motion for summary judgment and granted in part and denied in part the Defendant's motion, dismissing the breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and conversion claims. (*See* Docket Nos. 74, 75.) Only the fraud and piercing the corporate veil claims are remaining for trial. *Id.* Subsequently, pursuant to a Joint Pre-Trial Order, (Docket No. 86), the parties filed the instant *in limine* motions to preclude certain arguments, evidence, and testimony at trial.

## II. LEGAL ANALYSIS

### A. Defendant's Motions

#### i. Preclude Plaintiff from Seeking Damages Not Sought in the Complaint

Defendant argues that Plaintiff should be precluded from presenting evidence or seeking recovery for punitive damages or attorneys' fees at trial, since these were not alleged in the Complaint. The Joint Pre-Trial Order notes that Plaintiff intends to seek punitive damages and attorneys' fees.

In *Seibert v. Nusbaum, Stein, Goldstein, Bronstein & Compeau, P.A.*, the Third Circuit held that "a plaintiff cannot pursue a claim for punitive damages where . . . no hint of such a claim was contained in the pleadings or the pretrial order." 167 F.3d 166, 171 (3d Cir. 1999); *see also Born v. Monmouth Cty. Corr. Inst.*, 458 F. App'x 193, 195 (3d Cir. 2012) (noting that pretrial memorandum did not mention punitive damages and that plaintiff did not request punitive damages until after the close of evidence at trial). Here, since the Joint Pre-Trial Order clearly states that Plaintiff intends to seek punitive damages, pursuing such recovery at trial is not precluded.

However, the Third Circuit has held that attorneys' fees constitute special damages and must be specifically pleaded, pursuant to Rule 9(g) of the Federal Rules of Civil Procedure ("FRCP"). *See Maidmore Realty Co. v. Maidmore Realty Co.*, 474 F.2d 840, 843 (3d Cir. 1973). Plaintiff failed to plead attorneys' fees in

its Complaint and does not argue the issue in its opposition brief.

Accordingly, the Court will allow Plaintiff to seek punitive damages at trial, but will preclude the seeking of attorneys' fees.

### ii. Preclude Plaintiff from Calling Robin Cavusoglu as a Witness at Trial

Defendant asserts that Plaintiff did not include Ms. Cavusoglu in its Rule 26 disclosures nor in its interrogatory responses, and did not identify her as a witness prior to the Joint Pre-Trial Order. Thus, Defendant argues that Plaintiff is precluded from calling her as a witness at trial pursuant to FRCP 37(c)(1). Moreover, Defendant states that Ms. Cavusoglu has the right not to testify under the spousal privilege.

While Federal common law and New Jersey law recognize a privilege for martial communications in civil and criminal cases, one spouse's testimony regarding the acts of the other spouse is not privileged. *See Andrews v. Holloway*, 256 F.R.D. 136, 147 (D.N.J. 2009). Plaintiff states that the questioning of Ms. Cavusoglu will be limited to "personal knowledge of facts related to the claims and defenses" in this case, including her knowledge of transfers evidenced in the HGC bank statements to either Ms. Cavusoglu or companies she owned or controlled. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion In Limine ("Pl. Opp.") at 5, ECF No. 101.) Such questioning by the Plaintiff would fall outside the spousal privilege.

As for the untimely disclosure, the Third Circuit has set forth four factors to determine whether to exclude or permit a witness' testimony: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the extent to which admission of the late evidence would disrupt the orderly and efficient trial of the case; (4) bad faith or willfulness in failing to comply with the court's orders; and (5) the importance of the evidence. *See Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904 (3d Cir. 1977). Ms. Cavusoglu entered this proceeding late (in April 2014) in order to quash subpoenas served by Plaintiff on two banks. (*See* Docket No. 33.) Ms. Cavusoglu stated that she had sole possession of the accounts held in these banks, and that her husband had no signatory authority over them. (*See id.*)

Plaintiff argues that they thus learned of Ms. Cavusoglu's participation in the alleged "fraud" only "at the very end of discovery." (Pl. Opp. at 4.) Based on this, the Court finds that Plaintiff's failure to include Ms. Cavusoglu in its Rule 26 disclosures was not as a result of bad faith or willfulness. In addition, any prejudice or surprise to the Defendant appears minimal, since he would have been well aware of who had possession of the relevant accounts as well as his wife's participation in the alleged transactions. Lastly, the evidence itself appears important to the merits of Plaintiff's claims. Consequently, the Court will allow Plaintiff to call Ms. Cavusoglu as a witness, provided that such testimony is strictly limited to the issue of veil piercing in the instant trial and Mr. Cavusoglu's actions in regards to HGC and not as to the issues underlying the related pending matter before this Court.

### iii. Preclude any Testimony or Evidence Regarding Prior Lawsuits or Other Entities in Which Defendant Has Held an Ownership Interest

Defendant asserts that Plaintiff should be precluded from introducing any evidence of prior lawsuits against Defendant because: (i) these were settled years before the transaction that gave rise to Plaintiff's claims; (ii) the suits did not involve an adjudication on the merits; and (iii) there were no admissions of liability. In particular, Defendant requests that the Court preclude Plaintiff from offering exhibits from these lawsuits, including the complaint, settlement agreements, or judgments. Similarly, Defendant argues that any evidence regarding other entities in which he had an interest are of limited relevance and any testimony or evidence regard them would be more prejudicial than probative.

Plaintiff states that it intends to introduce evidence of the prior settlements and judgments and the other entities for two purposes: (i) to demonstrate that Defendant used HGC's money to pay-off obligations other creditors obtained against him personally and his other companies—failing to respect corporate formalities—and (ii) that Defendant was aware of and omitted mentioning the Great Lakes judgment against him when he told Plaintiff that "he did a lot of business with Great Lakes"—thus inducing Plaintiff to do business with him.

In light of the above, Defendant's argument that Rule 404(b) of the Federal Rules of Evidence ("FRE") prohibits introducing the prior lawsuits as well as the

other entities is not on point. Plaintiff does not intend to introduce such testimony or evidence on a propensity basis. In fact, it appears that for Plaintiff's purposes there does not need to be any substantial discussion of the facts surrounding these settlements or judgments, merely that Defendant and his other companies were indebted to creditors and that he used HGC's funds to pay these creditors. Similarly, any evidence or testimony regarding these other entities can be limited to their interactions with HGC where violations of HGC's corporate formalities occurred—including, for example, paying these entities' financial obligations. Accordingly, the Court will allow Plaintiff to introduce at trial the prior lawsuits and the other entities in which Defendant has held an ownership interest, provided that, as noted above, Plaintiff appropriately limits such evidence or testimony.

In regards to the Great Lakes judgment, Plaintiff aims to introduce this judgment to establish that Defendant made a material omission when he stated that he "did a lot of business with Great Lakes," and that Plaintiff relied on this material omission when it decided to do business with him. *See Scholar Intelligent Sols., Inc. v. New Jersey Eye Ctr., P.A.*, No. CIV.A. 13-642 SRC, 2013 WL 2455959, at *2 (D.N.J. June 5, 2013) (stating that in order to establish fraud a plaintiff must demonstrate that (1) defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission to its detriment.) This is a non-propensity purpose for introducing the settlement. However, to the extent Defendant argues that it would be hard for a jury to separate this prior judgment—for which the Plaintiff will have to introduce some surrounding facts in order to make it relevant—from the claim asserted in his action, a limiting instruction by the Court to the jury, stating that they should consider this evidence only for the limited purpose of whether the Defendant fraudulently induced Plaintiff to do business with him, will address that concern.

Therefore, the Court denies Defendant's motions to preclude testimony or evidence regarding prior lawsuits or other entities.

### iv. Preclude any Testimony or Evidence Regarding Personal or Corporate Bank Accounts Before September 2009 or After March 2010

Defendant asserts that Plaintiff seeks to introduce financial records of HGC and Defendant from 2007 to 2011 (the four years surrounding the alleged fraudulent transaction). Defendant argues that the evidence is not relevant to the Plaintiff's claims, Fed. R. Evid. 401, and will only serve to confuse the jury, Fed. R. Evid. 403. Defendant goes on to state that such evidence is, in fact, more applicable to the other pending case between the parties, which seeks recovery under the Uniform Fraudulent Transfer Act. Plaintiff argues, in turn, that the bank statements prior to the transaction can demonstrate the fraud claim and the statements after the transaction are relevant to the veil piercing claim.

Plaintiff's argument has merit, though the introduction of statements for two years prior to the transaction seems excessive. Consequently, Plaintiff is limited to introducing bank statements for three months prior to the transaction, as this will be sufficient to demonstrate any fraud by the Defendant (*i.e.* that he never intended to pay Plaintiff for the goods) and will limit any potential jury confusion. The financial statements after the transaction would be relevant to the veil piercing claim, including Defendant's alleged attempt to evade payment while the *Cevdet I* suit was being litigated and after the settlement agreement between the parties. Moreover, Defendant's argument to exclude the later statements (post-March 2010) are not on point, as these records can demonstrate that in transferring money from HGC to his wife and children, Defendant siphoned funds from the corporation. *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (noting that one of the factors to be considered in order to pierce the corporate veil is whether there was "siphoning of funds of the corporation by the dominant stockholder.") Thus, Plaintiff may present all of the pertinent post-March 2010 transactions that demonstrate an abuse by Defendant of the corporate form.

### v. Preclude any Testimony or Evidence Regarding the Settlement Reached with Sunrise Commodities

Defendant argues that the settlement between Sunrise Commodities, HGC, and the Defendant's other entities (the "Sunrise Settlement") is not relevant to the instant action. However, Plaintiff states that it plans to introduce this settlement in order to demonstrate Defendant's failure to abide by corporate formalities, as he executed a settlement agreement on behalf of HGC after he had allegedly dissolved

6

the entity. Furthermore, Plaintiff argues that money from this settlement was transferred to other entities owned by the Defendant as well as to his family, demonstrating siphoning of funds. *See Lake Asbestos*, 843 F.2d at 150. In light of Plaintiff's arguments, the Court finds that the Sunrise Settlement is relevant to Plaintiff's veil piercing claim and that it is more probative than prejudicial. *See* Fed. R. Evid. 401; 403. The Court will, thus, allow its introduction to the extent that it satisfies any authentication or hearsay issues. However, Plaintiff should limit any evidence or testimony regarding the Sunrise Settlement only to HGC's involvement.

### vi. Motions Regarding Defendant's Alleged Re-Entry into the Food Import Business

Plaintiff does not state why evidence or testimony regarding Defendant's alleged re-entry into the food import business is relevant to its fraud or piercing the corporate veil claims. In tandem, Plaintiff argues in its own *in limine* motion that the Defendant should be precluded from calling a Natural Food Source corporate representative (Mr. Murat), partly asserting that such a witness would not be relevant. Mr. Murat is intended to rebut Plaintiff's contention as to Defendant's alleged re-entry. Since Plaintiff fails to demonstrate how this issue is relevant to its claims, the Court will preclude any testimony regarding Defendant's alleged re-entry. Consequently, on Defendant's own admission, the testimony of Mr. Murat is thus irrelevant and the Court will grant Plaintiff's motion to preclude the calling of a Natural Food Source corporate representative.

## B. Plaintiff's Motions

### i. Preclude Testimony That Defendant Capitalized HGC with Funds Obtained from a Mortgage on His New Hampshire Home

Plaintiff argues that the Defendant has provided conflicting information regarding how HGC was capitalized. In addition, Plaintiff contends that Defendant's failure to produce relevant documents regarding his mortgage precludes such testimony. The Court finds that it would be best to have the jury resolve any issues of conflicting testimony at trial. Besides, allowing the Plaintiff to probe the lack of evidence regarding the mortgage on cross-examination would permit the jury to properly evaluate the credibility of this defense. Accordingly,

the Court denies Plaintiff's motion to preclude such testimony.

### ii. Preclude the Raising of Allocation of Fault Defense

Plaintiff contends that Defendant belatedly raised an "allocation of fault" defense in the Joint Pre-Trial Order. Defendant argues that his Sixth Affirmative Defense adequately signaled his intent to argue this defense at trial. The Sixth Affirmative Defense states, "Plaintiff is estopped from recovering because of its own conduct, actions, omissions, promises and/or representations."

The principal issue is whether Plaintiff's Sixth Affirmative Defense provided notice "at a pragmatically sufficient time" so as not to prejudice the Plaintiff. *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991). Defendant's language does not track the New Jersey statute of comparative negligence he seeks to avail. *See* N.J. Stat. Ann. § 2A:15-5.1 (2015). Moreover, Defendant's claim that his "estoppel" language was sufficient notice is not entirely availing. Nonetheless, the Third Circuit has "taken a more forgiving approach to parties who fail to raise affirmative defenses in an answer, as courts have held that the failure to raise an affirmative defense by responsive pleading or appropriate motion does not always result in waiver." *Sultan v. Lincoln Nat. Corp.*, No. CIV 03-5190 (JBS), 2006 WL 1806463, at *13 (D.N.J. June 30, 2006). While raising an affirmative defense even at summary judgment is "not the most appropriate," "in cases in which the plaintiff was not prejudiced, [the Third Circuit has] held that there was no waiver." *Eddy v. Virgin Islands Water and Power Authority*, 256 F.3d 204, 209 (3d Cir. 2001).

Defendant argues that he raised this affirmative defense in his pre-trial submissions, though he provides no citations for support. However, by Plaintiff's own admission, this defense was raised in the Joint Pre-Trial Order, providing Plaintiff with "sufficient time" to respond without prejudice. *See Anderson v. United States*, No. CIV. A. 93-589 MMS, 1996 WL 490262, at *9 (D. Del. Aug. 23, 1996) (stating that "the issue of plaintiff's contributory negligence, litigated by the express consent of the parties pursuant to the Pre-Trial Order will be treated in all respects as it had been raised in the pleadings" and finding no prejudice.) Lastly, the language in Defendant's Sixth Affirmative Defense intimated that a defense of comparative negligence could be raised, thus further mitigating any

potential prejudice to the Plaintiff. *See De La Vera v. Holguin*, No. CIV.A. 14-4372 MAS, 2014 WL 4979854, at *9 n. 4 (D.N.J. Oct. 3, 2014) (finding that where petitioner knew prior to hearing which affirmative defenses would be raised and was "well aware of the potential" of one or more of these defense to be raised, there was no prejudice).

Therefore, the Court will deny Plaintiff's motion and will allow the Defendant to present such a defense at trial.

### iii. Preclude Testimony of Aret Museoglo and Barbaros Karaahmet

Lastly, in a letter to the Court on December 3, 2015, the Defendant stated that he will not be calling Aret Museoglo and Barbaros Karaahmet as witnesses. (Docket No. 106.) Consequently, Plaintiff's *in limine* motions as to these two individuals are denied as moot.

## III. CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's *in limine* motion to preclude testimony of a corporate representative from Natural Food Source and **DENIES** Plaintiff's other *in limine* motions. In turn, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to preclude Plaintiff from seeking damages not sought in the Complaint, **GRANTS** the motion to preclude any testimony or evidence regarding Defendant's alleged re-entry into the food import business, and **DENIES** Defendant's remaining motions. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 15, 2016**